UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SILVIA CORIA,                          )   NO. EDCV 05-527-MAN
                                       )
                Plaintiff,             )
        v.                             )   MEMORANDUM OPINION AND ORDER
                                       )
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of the                    )
Social Security Administration,        )
                                       )
                Defendant.             )
_____)

        Plaintiff filed a Complaint on June 17, 2005, seeking review of the
denial by the Social Security Commissioner ("Commissioner") of
Plaintiff's claim for disability insurance benefits ("DIB").  On July 5,
2005, the parties filed a "Consent to Proceed Before a United States
Magistrate Judge," pursuant to 28 U.S.C. § 636.  The parties filed a
Joint Stipulation on February 28, 2006, in which:  Plaintiff seeks an
order reversing the Commissioner's decision and awarding benefits, or,
alternatively, an order remanding the case to the Commissioner for
further consideration; and Defendant requests that the Commissioner's
decision be affirmed.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on December 16, 2002. (Administrative Record ("A.R.") 64-66.)  Plaintiff claims to have been disabled since June 14, 2001, due to arthritis and muscle pain.  (A.R. 32, 38, 64.)  Plaintiff has past relevant work experience as a power sewing machine operator.  (A.R. 21.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On May 10, 2004, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ").  (A.R. 251-62.)  In a June 14, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied her request for review of that decision. (A.R. 20-25, 5-10.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his June 14, 2004 decision, the ALJ found that Plaintiff:  had not engaged in substantial gainful activity at any time relevant to this case; and met the disabled insured status requirements on June 14, 2001, the date on which she claimed to become unable to work, and continued to meet those requirements through the date of the decision.  (A.R. 24.) He found that Plaintiff's impairments -- consisting of strains and sprains in her musculoskeletal system, minimal degenerative changes, and obesity -- were "severe," but she did not have an impairment or combination of impairments listed in or medically equal to one listed in

Appendix 1, Subpart P, Regulations No. 4.  (*Id.*)

The ALJ found that:

> [Plaintiff] has the residual functional capacity to perform
> light work-related activities consisting of lifting and/or
> carrying 20 pounds occasionally and 10 pounds frequently,
> standing and/or walking for 6 hours out of an 8-hour work day,
> and sitting for 6 hours out of an 8-hour work day.  She cannot
> climb ladders, ropes, or scaffolds.  She can occasionally
> climb, balance, stoop, kneel, crouch, and crawl.[1]

(A.R. 24.)  In addition, the ALJ found that Plaintiff's subjective
complaints did not credibly establish a less restrictive residual
functional capacity.  (*Id.*)

The ALJ further found that Plaintiff's past relevant work as a
power sewing machine operator did not require the performance of work-
related activities precluded by her residual functional capacity.  (A.R.
24.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (*Id.*)

**STANDARD OF REVIEW**

This  Court  reviews  the  Commissioner's  decision  to  determine

_____

[1]      "Light work" involves "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10
pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

3

whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. Id. at 1041; see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

///

///

///

4

**DISCUSSION**

Plaintiff alleges two disputed issues.  <u>First</u>, she contends that the ALJ failed to consider properly the opinions of Dr. Richard Fedder, a neutral agreed medical examiner who examined Plaintiff in connection with her worker's compensation claim.  <u>Second</u>, she contends that the ALJ failed to consider properly the opinions of Dr. Anthony Fenison, her treating physician.  (Joint Stip. at 3.)

**A.   <u>The ALJ Improperly Considered And Failed To Discuss The Entirety Of Plaintiff's Limitations As Found By Dr. Fedder</u>.**

The opinions of examining physicians and non-examining medical experts may constitute substantial evidence upon which an ALJ may rely when they are properly supported. *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir.2002)("The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); <u>Tonapetyan v. Halter   </u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan</u>, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").  The opinion of an examining physician generally should be accorded more weight than that of a non-examining physician.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  An ALJ must provide specific and legitimate reasons for rejecting the

contradicted opinion of an examining physician.  <u>Lester v. Chater</u>, 81
F.3d 821, 830-31 (9th Cir. 1995).

In his detailed and comprehensive, 34 page January 21, 2004 report,
Dr. Fedder diagnosed Plaintiff with:  "chronic cervical sprain and
strain, with a chronic strain of the upper shoulders"; "chronic sprain
with degenerative change in the AC joint bilaterally"; "mild impingement
of both shoulders"; "chronic sprain and strain of the dorsal and lumbar
spine"; "discogenic disease at L5-S1"; and "chronic sprain of both knees
with patellofemoral chondromalacia of both knees."[2]  (A.R. 238.)  Dr.
Fedder noted Plaintiff's subjective complaints, such as "constant
minimal discomfort in the posterior cervical and upper shoulder muscles,
as well as the dorsal and lumbar spine diffusely." (*Id.*)  He further
noted that Plaintiff would experience pain in activities involving:
repetitive or sudden movement of her cervical spine; repetitive bending
or prolonged stooping; or lifting, carrying, or pushing. ( *Id.*)  In
describing the objective testing he reviewed, Dr. Fedder summarized x-
rays that indicated abnormalities and degenerative changes.[3]

---

[2]    "Patellofemoral   chondromalacia"   is   the   softening   and
degeneration of the cartilage underneath the kneecap.

[3]    (A.R. 235 -- Dr. Fedder's description of Plaintiff's x-rays,
noting: 1) "AP, lateral, flexion/extension, obliques and open mouth
view of the cervical spine reveals a straightened cervical lordosis";
"[t]here is some calcification posterior to the C6 spinous process"; and
"[t]here is degenerative change at C4-5 and C5-6"; 2) "AP, internal,
external and abduction views of both shoulders . . . [reveal] some
degenerative change in the AC joint" and "[t]here is degenerative change
in the AC joint [of Plaintiff's left shoulder]"; 3) "AP and lateral
[views] of the dorsal spine reveal . . . diffuse degenerative change in
the dorsal region"; 4) "AP, lateral, flexion/extension, obliques and
spot view of the lumbar spine reveals . . . productive and degenerative
change at L3-4" and "narrowing with degenerative change at L5-S1"; and
5) "AP, lateral, skyline and tunnel view of both knees . . [reveals]

In setting forth her work restrictions, Dr. Fedder stated: "[Plaintiff is limited with respect to] repetitive or sudden movement of the cervical spine or prolonged sitting with the neck flexed or extended.  She should not lift, carry, push or pull very heavy objects and should avoid heavy lifting.  Work restrictions with regard to the shoulders limit [Plaintiff] from lifting, carrying, pushing or pulling of very heavy objects."  (A.R. 239.)

In discussing the January 21, 2004 opinion of Dr. Fedder, the ALJ stated:

> On January 21, 2004, Dr. Richard Fedder conducted a consultative orthopedic examination as an agreed medical evaluator (Exhibit 7F).  [Plaintiff] said she was 5'4" and weighed 220 pounds.  Computerized test results of [Plaintiff's] grip strength and lumbar strength revealed that [Plaintiff] was not exerting full effort (Exhibit 7F, p. 28).  Dr. Fedder's examination revealed no findings other than subjective complaints of tenderness in the neck, upper shoulders, back, and knees, subjective limitation of motion of the lumbar spine, and squatting 25% of normal.  Reflexes and motor strength were normal, and sensation was normal other than diminished sensation in the right versus left lower leg.  Dr. Fedder's restrictions from heavy lifting are consistent with the assessed residual functional capacity assessment

[p]atellofemoral chondromalacia [bilaterally].")

(Exhibit 7F, p. 30).

(A.R. 23.)

Plaintiff contends that, in rendering his residual functional capacity finding, the ALJ improperly failed to consider and include the non-exertional limitations Dr. Fedder found, namely, his neck restrictions. (Joint Stip. at 3-4.) Plaintiff further contends that the ALJ's failure to address these limitations, much less provide specific and legitimate reasons for rejecting them, constitutes error. (Joint Stip. at 4.)

To the extent the ALJ characterized Dr. Fedder's opinion as "consistent" with his own residual functional capacity finding, the ALJ misstated Dr. Fedder's opinion and improperly disregarded the non-exertional limitations found by Dr. Fedder. *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); *cf.*, Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)(ALJ did not improperly reject treating doctor's opinion, because it was consistent with the ALJ's determination that the claimant was capable of performing a "wide range of light work"). The ALJ's failure to discuss these non-exertional limitations, much less provide specific and legitimate reasons for rejecting them, constitutes error. Lester, 81 F.3d at 830-31.

Defendant maintains that, because Plaintiff's past relevant work as

a sewing machine operator did not require activities precluded by Dr. Fedder's neck restrictions, the ALJ's finding that Plaintiff could perform her past relevant work should be affirmed, even assuming these restrictions should be included in her residual functional capacity. (Joint Stip. at 5.)  Specifically, Defendant cites Dr. Fedder's opinion that Plaintiff's past relevant work as a sewing machine operator required only prolonged sitting with the neck in a <u>fixed</u> position and, therefore, did not require sudden neck movements, flexion, or extension of the neck.  (*Id.*, citing A.R. 241.)  Plaintiff appropriately responds that it is possible that her past relevant work as a sewing machine operator could have required her to maintain her neck in both a <u>fixed</u> and <u>flexed</u> position.  (Joint Stip. at 6.)  In any event, even if these non-exertional limitations are included in Plaintiff's residual functional capacity, any finding that Plaintiff can perform her past relevant work must be based upon the testimony of a vocational expert. <u>Desrosiers</u>, 846 F.2d at 577 (where a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations, the ALJ must seek the testimony of a vocational expert to determine what jobs a claimant can perform with such limitations).  It is not appropriate for this Court to determine that Plaintiff can perform her past relevant work without such an evidentiary foundation, if these non-exertional limitations are present. *See, e.g.,* <u>Burkart v. Bowen</u>, 856 F.2d 1335, 1341 (9th Cir. 1988)(ALJ could not assume role of vocational expert in finding jobs that the claimant could perform after finding that claimant could not perform the full range of sedentary and light jobs).

1    Accordingly, the ALJ's failure to address the non-exertional
2    limitations found by Dr. Fedder constitutes reversible error.

3

4    **B.   <u>The ALJ Improperly Rejected Dr. Fenison's Opinion</u>.**

5

6    Ordinarily, the opinions of a treating physician should be given
7    great weight, if not controlling weight. *See* Social Security Ruling 96-
8    2p; *see also* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.
9    1989)(opinions of treating physicians are entitled to great deference).
10   When the ALJ rejects the opinion of a treating physician, even if it is
11   contradicted, the ALJ may reject that opinion only by providing specific
12   and legitimate reasons for doing so, supported by substantial evidence
13   in the record. <u>Lester</u>, 81 F.3d at 830; *see also* <u>Reddick v. Chater</u>, 157
14   F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating
15   doctors' opinions and relying upon Social Security examiners' opinions
16   in finding that claimant's chronic fatigue syndrome had not rendered her
17   disabled). Broad and vague reasons will not suffice for rejecting the
18   treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602
19   (9th Cir. 1989).

20

21   In his April 24, 2003 report, Dr. Fenison diagnosed Plaintiff with:
22   1) "chronic discogenic back pain/lumbar spondylosis"; 2)
23   "chronidromalacia of bilateral patellofemoral joints"; 3) "cervical
24   spondylosis/discogenic neck pain – resolved"; 4) "bilateral shoulder
25   pain – resolved"; and 5) "left rotator cuff tendinitis - resolved."
26   (A.R. 206.) In setting forth Plaintiff's work restrictions, Dr. Fenison
27   stated:

28
                                    10

[Plaintiff] should be precluded from performing any heavy lifting or repeated bending or stooping activities involving her lumbar spine. [Plaintiff] should be precluded from performing any prolonged weight bearing, kneeling, squatting, or crouching activities involving bilateral knee joints. [Plaintiff] should be prophylactically precluded from performing any repetitive motions of the cervical spine or heavy lifting or work at/or above shoulder level for the left upper extremity.

The prophylactic restrictions for the cervical spine and left upper extremity are to prevent [Plaintiff] from experiencing additional pathology which is currently resolved at this point in time.

(A.R. 207.)

In discussing Dr. Fenison's records, the ALJ stated:

Dr. Anthony Fenison treated [Plaintiff] pursuant to her workers compensation claim, and he placed [Plaintiff] on temporary disability (Exhibit 2F, pp.52-61). Reports prepared for worker's compensation cases, such as those by Dr. Fenison, are often seen in disability insurance benefits cases. Although these doctors are experienced worker's compensation reporting sources, determinations regarding [Plaintiff's] residual functional capacity or disability made by any other

11

entity, governmental or non-governmental, are not binding on the Social Security Administration. Such determinations use their own criteria and are inconsistent with the medical evidence summarized herein and with [Plaintiff's] own testimony. Therefore, Dr. Fenison's expressions of temporary disability are given little weight.

Dr. Fenison recommended that Dr. M.I. Sami, another orthopedic surgeon, examine [Plaintiff], which Dr. Sami did on February 5, 2002 (Exhibit 2F, pp. 47-50). Dr. Sami found no objective findings during his examination, and he told Dr. Fenison and [Plaintiff's] worker's compensation attorneys that there was nothing he could do that Dr. Fenison was not doing, and he did not recommend surgery (Exhibit 49-50).

Clinical records reflect no persistent spasm or neurovascular deficits. [Plaintiff] limited her range of motion of the back; otherwise, all examinations were normal. By April 18, 2002, Dr. Fenison reported that [Plaintiff's] left shoulder and neck condition had completely resolved, and [Plaintiff] reported that her knees were better (Exhibit 2F, p. 32). [Plaintiff] continued the conservative treatment with Dr. Fenison until March 13, 2002, when he finally issued a permanent and stationary report, even though [Plaintiff's] condition was essentially unchanged throughout his care. The physical examination revealed no changes other than subjective loss of range of motion of the back and complaints of

1    tenderness of the back and knees (Exhibit 6F, p. 7). [Dr.
2    Fenison] recommended restrictions from heavy lifting, repeated
3    bending and stooping, prolonged weight bearing, kneeling,
4    squatting, or crouching, repetitive motions of the cervical
5    spine, and work above the shoulder for the left upper
6    extremity (Exhibit 6F, p. 7).  In light of the fact that
7    [Plaintiff's] neck and shoulder pain had resolved and there
8    were no objective findings other than the MRI findings, Dr.
9    Fenison's opinion is of limited probative value.

10

11   (A.R. 22-23.)

12

13        Plaintiff contends that the ALJ failed to provide specific and
14   legitimate reasons for rejecting Dr. Fenison's opinion. (Joint Stip. at
15   7-9.)  Specifically, Plaintiff contends that the ALJ's rejection of Dr.
16   Fenison's limitation against prolonged weight bearing was not grounded
17   on any specific or legitimate reason, especially in view of the fact
18   that her knee condition was not resolved.  (Joint Stip. at 8.)
19   Plaintiff further contends that the ALJ improperly rejected Dr.
20   Fenison's restrictions pertaining to her cervical spine and upper
21   extremities, even though Dr. Fenison found her cervical condition was
22   resolved, because he sufficiently explained that these were prophylactic
23   restrictions.  (*Id.*)

24

25        An ALJ is not bound by opinions regarding exertional limitations
26   and disability rendered in a worker's compensation context.  *See*
27   <u>Desrosiers</u>, 846 F.2d at 575.  Nevertheless, even though Dr. Fenison

28
                                      13

rendered his opinion in connection with Plaintiff's worker's compensation claim, he noted significant non-exertional limitations that could impact Plaintiff's residual functional capacity finding, which the ALJ was required to address and provide appropriate reasons for rejecting.

Here, Dr. Fenison's limitations regarding Plaintiff's upper extremities (*i.e.*, A.R. 207 -- limitations on "repetitive motions of the cervical spine or heavy lifting or work at/or above shoulder level for the left upper extremity") are fairly consistent the upper extremities limitations Dr. Fedder found (*i.e.*, A.R. 239 -- limitations on "repetitive or sudden movement of the cervical spine or prolonged sitting with the neck flexed or extended").  Thus, to the extent that the ALJ reasoned that these limitations found by Dr. Fenison are "inconsistent" with the medical evidence of record, he did not accurately state the record.  Furthermore, Plaintiff's testimony is not "inconsistent" with these limitations. ( *See* A.R. 257 -- Plaintiff testified that she has pain in her "neck, all of it, my whole spine, [and both] shoulders.")  Despite the fact that Dr. Fenison included these limitations as prophylactic measures to preclude aggravating a resolved chronic impairment, in view of the fact that the ALJ must reconsider the non-exertional limitations found by Dr. Fedder regarding Plaintiff's upper extremities on remand, he should reconsider Dr. Fenison's similar limitations, as well.

Dr. Fenison's preclusions against prolonged weight bearing are based on his opinion regarding Plaintiff's knee impairment, which he

14

diagnosed as "chronidromalacia or bilateral patellofemoral joints" and found to be continuing as of his April 24, 2003 report.  (A.R. 206.) Furthermore, this limitation is supported by objective testing and is not at odds with Plaintiff's testimony.[4]  (A.R. 236 -- Dr. Fedder's January 21, 2004 report describing a knee x-ray and indicating that "[p]atellofemoral chondromalacia is seen bilaterally"; A.R. 181 -- December 20, 2001 MRI demonstrating "patellar chondromalacia"; A.R. 257 -- Plaintiff testimony that she has pain in her knees which prevents her from working; A.R. 259 -- Plaintiff's testimony that she can stand for ten to 15 minutes and can walk a half hour.)  Thus, to the extent that the ALJ rejected this limitation as inconsistent with the medical evidence and Plaintiff's testimony, the reasons for his rejection are neither specific or legitimate.

Accordingly, the ALJ's rejection of Dr. Fenison's limitations regarding the use of Plaintiff's upper extremities and his preclusion on prolonged weight bearing activities constitutes reversible error.[5]

///

///

///

---

[4]    Although the ALJ noted that Dr. M.I. Sami, an orthopedic surgeon to whom Plaintiff was referred by Dr. Fenison, found "no objective findings during his examination," Dr. Sami's report shows that he only reviewed a December 18, 2001 MRI of Plaintiff's cervical spine, which demonstrated a "2mm disc bulge at C4-C5," and he requested that "all medical records be made available for [his] review."  (A.R. 165.)

[5]    However, as both Dr. Fenison and Dr. Fedder found that Plaintiff could perform work at the "light" exertional level, Plaintiff's argument  -- that she should be found disabled pursuant to Medical Vocational Guidelines Rule 201.17, which applies when a claimant is limited to work at the "sedentary" level -- is unavailing.

**C.    <u>Remand Is Necessary</u>**.

In view of the ALJ's errors in rejecting the limitations found by the examining and treating physicians explained above, this action must be remanded.  *See* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister</u>, 888 F.2d at 603 (remand appropriate to remedy defects in the record).

<b>CONCLUSION</b>

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///
///
///
///

1     IT IS FURTHER ORDERED that the Clerk of the Court shall serve

2  copies of this Memorandum Opinion and Order and the Judgment on counsel

3  for Plaintiff and for Defendant.

4

5     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7  DATED: September 26, 2006

8                                    _____/s/_____

                                     MARGARET A. NAGLE

9                                    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     17